**Tricia MILLER, Executrix of the estate of Rhonda Bishop, Plaintiff–Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant–Appellee.**

No. 95–3825.

United States Court of Appeals, Sixth Circuit.

Submitted June 14, 1996.

Decided June 28, 1996.

Lynn E. Lebit (briefed), Sindell, Lowe & Guidubaldi, Cleveland, OH, for Plaintiff-Appellant.

Josheph H. Wantz (briefed), Meyers, Hentemann, Schneider & Rea Co., Cleveland, OH, for Defendant-Appellee.

Before: BROWN, KENNEDY, and WELLFORD, Circuit Judges.

BAILEY BROWN, Circuit Judge.

Tricia Miller, executrix of and heir at law to the estate of Rhonda Bishop, appeals from the district court's award of summary judgment to State Farm Mutual Automobile Insurance Company ("State Farm"), in this diversity action brought to determine the amount potentially payable pursuant to the underinsured motorist provision of an insurance policy which State Farm issued to Bishop. The sole issue is whether the district court was correct when it held that, under Ohio's choice of law rules, Pennsylvania law applies because the instant case involves the interpretation of a contract executed in Pennsylvania by a Pennsylvania resident. We AFFIRM.

## I. BACKGROUND

The parties stipulated to the material facts. Plaintiff Miller is an Ohio resident, and her decedent, Bishop, was a Pennsylvania resident. Bishop purchased an insurance policy for automobile liability coverage from State Farm while residing in Pennsylvania. State Farm, which is licensed to do business in both Pennsylvania and Ohio and which has its principal place of business in Illinois, agreed to provide Bishop with uninsured and underinsured motorist coverage in exchange for premium payments. Under the policy, State Farm would pay Bishop a limit of $100,000 per person and $300,000 per accident for "damages for **bodily injury** an **in-**

*sured* is legally entitled to collect from the owner or driver of an . . . *underinsured motor vehicle*."

Bishop suffered a wrongful death in 1993 as a result of an automobile collision in Monroe Township, Ohio. The underinsured driver of the other vehicle, an Ohio resident, caused the fatal collision and is not a party to this action. Bishop's insurance policy with State Farm was in full force and effect on the date of the fatal accident.

After exhausting the tortfeasor's insurance policy, Miller, as executrix of the estate of Bishop, made an underinsured motorist claim against State Farm. The claim requested all damages which Miller was legally entitled to collect from the tortfeasor. State Farm paid Miller $100,000 pursuant to the "per person" clause of the insurance policy, and claimed that that was the entire amount of the damages for which it was responsible. The parties agreed, however, that Miller reserved the right to litigate the question of whether the remaining $200,000 of the "per accident" policy limit was available.

Miller eventually sued State Farm in Ohio state court, alleging that State Farm had wrongfully denied full payment under the policy Bishop had purchased. Miller asserts that, under Ohio law, she is entitled to the full $300,000 "per accident" limit of the policy. State Farm removed the case to federal district court on diversity grounds, and Miller then amended her complaint to make it a declaratory judgment action. The parties stipulated that "[a] question has arisen as to whether Ohio law or Pennsylvania law should apply to determine the amount payable under the uninsured/underinsured motorist provisions of the policy."

The importance of this choice of law question is a matter of money. State Farm notes (and Miller does not dispute) that, under Pennsylvania law, Miller would be entitled only to the $100,000 "per person" limit for Bishop's wrongful death, while under Ohio law, Miller "would *arguably* be entitled to the $300,000.00 'per accident' limits." Br. of Appellee at 9 (emphasis added). Thus, State Farm moved for summary judgment, and the court below granted its motion, finding that, under Ohio choice of law rules, Pennsylvania

law controlled the amount of coverage for which State Farm was liable. This appeal followed.

## II. ANALYSIS

### A. Standard of Review.

 Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). When considering an appeal from a district court's grant of summary judgment, we apply this same test, and our review is plenary. *E.g.*, *Maddox v. University of Tenn.*, 62 F.3d 843, 845 (6th Cir.1995). Further, when the material facts of a case are undisputed, as they are here, one of the parties is entitled to summary judgment. *Niecko v. Emro Mktg.*, 973 F.2d 1296, 1304 (6th Cir.1992). Finally, we conduct a *de novo* review of a district court's determinations of state law. *E.g.*, *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1220–21, 113 L.Ed.2d 190 (1991).

### B. Choice of Law.

 A federal court sitting in its diversity jurisdiction applies the choice of law rules of the forum state. *E.g.*, *Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Miller, the executrix, does not dispute the proposition that Ohio conflict of laws rules govern. Thus, we begin by looking to Ohio choice of law rules to determine what state law to apply to this case. Under Ohio law, courts apply interest-analysis tests set forth in the *Restatement (Second) of the Law, Conflict of Laws* to resolve conflict of laws issues. *E.g.*, *Gries Sports Enters. v. Modell*, 15 Ohio St.3d 284, 473 N.E.2d 807, 810 (1984), *cert. denied*, 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985).

 The basis of an action—i.e., whether it is deemed to be a tort case or a contract case—determines which of the *Restatement*'s interest-analysis tests an Ohio court must apply. If an action is deemed to be a tort action, section 146 applies, and the law of the state where the injury occurred pre-

sumptively controls. *Morgan v. Biro Mfg. Co.*, 15 Ohio St.3d 339, 474 N.E.2d 286, 288–89 (1984) (per curiam). If an action is based in contract, however, then section 188 applies, and the law of the state where the contract was made presumptively controls. *Nationwide Mut. Ins. Co. v. Ferrin*, 21 Ohio St.3d 43, 487 N.E.2d 568, 569 (1986) (per curiam).

▉ Thus, the question before us is whether, under Ohio law, tort law or contract law applies when determining an insurance company's liability pursuant to an underinsured motorist policy. Miller, the executrix, argues that we must apply Ohio tort law to determine the potential damages for which State Farm may be held responsible, because the tort which gave rise to this case occurred in Ohio.

The district court, however, found that it was "asked to decide whose law to apply to determine the amount of coverage *available* to the insured under State Farm's insurance policy." Thus, the court reasoned, this case "sounds in contract, not tort," because it "involves interpretation of a contract executed in Pennsylvania by a Pennsylvania resident." *See Fiste v. Atlantic Mut. Ins. Co.*, 94 Ohio App.3d 165, 640 N.E.2d 551, 553 (1994) (holding that an action sounded in contract where it involved an insured suing his insurer as to the insurer's contractual obligations, even though "the triggering event" was an automobile accident). The district court then held that, under Ohio choice of law rules, the law of the state where the contract was made—Pennsylvania—controlled the interpretation of the insurance contract between Bishop and State Farm. *E.g., Ferrin*, 487 N.E.2d at 569.

We agree with the district court's conclusions that this case, under Ohio law, sounds in contract and that it must, under Ohio choice of law rules, be decided under Pennsylvania law. The Supreme Court of Ohio recently stated, "We recognize that an action by an insured against an insurance carrier for payment of uninsured or underinsured motorist benefits is a cause of action **sounding in contract.**" *Miller v. Progressive Casualty Ins. Co.*, 69 Ohio St.3d 619, 635 N.E.2d 317, 321 (1994) (emphasis added). Although the *Miller* court did not address the precise issue before us—it invalidated insurance policy provisions that required insureds to bring claims for uninsured and underinsured coverage within one year of an accident—its express recognition that cases similar to the instant case sound in contract is quite persuasive.

We are aware that the Ohio cases in this area evince some confusion. We believe, however, that a close reading of the cases shows that they do not conflict. Rather, they are distinguishable by virtue of the questions they resolve.

For example, Miller chiefly relies on the case of *Kurent v. Farmers Insurance of Columbus, Inc.*, 62 Ohio St.3d 242, 581 N.E.2d 533 (1991), which presented the issue of whether a plaintiff was "legally entitled" to recover damages pursuant to an underinsured motorist policy. In *Kurent*, a Michigan driver injured Ohio residents in Michigan, where no-fault law denies non-economic damages unless such damages are established beyond a threshold limit. *Id.* 581 N.E.2d at 534. The Ohio residents, who could not satisfy that limit, sued their insurance company in Ohio for uninsured motorist benefits under their policy, arguing that Ohio law should apply for purposes of determining their coverage. *Id.* at 537. The court held that Michigan law applied because it was the site of the accident, and because under their policy the Ohio residents had to show both that (1) the injuring vehicle was uninsured, and (2) they were "legally entitled to recover" from its owner. *Id.* at 536 (citing *Sumwalt v. Allstate Ins. Co.*, 12 Ohio St.3d 294, 466 N.E.2d 544, 545 (1984)). Under Michigan's no-fault law, they were not "legally entitled to recover" from the Michigan driver, because the driver had no-fault insurance and because they could not meet the threshold limit for non-economic damages. Thus, they could not claim uninsured motorist benefits under the very terms of their policy. *Id.* 581 N.E.2d at 536–37.

Conversely, in the instant case, there is no question that Miller is "legally entitled to recover" underinsured motorist benefits under the policy State Farm issued. Miller has already exhausted the tortfeasor's insurance, and State Farm has paid her what it believes is the full amount due under its policy. There is no need to look to the tort law of the state where the accident occurred, as the

*Kurent* court did, to determine whether Miller is "legally entitled to recover" from the tortfeasor and thus is also due underinsured motorist benefits. That substantive tort law question has already been answered in the affirmative. *Cf. Motorists Mut. Ins. Co. v. Howard*, No. 1–95–83, 1996 WL 223696, at *2 (Ohio.Ct.App. May 2, 1996) (following *Kurent* where the issue was whether the insured had any obligation to pay benefits); *Ellis v. Midwestern Indem. Co.*, 85 Ohio App.3d 289, 619 N.E.2d 1040, 1043 (1993) (holding that, where reasonable minds could differ on whether the plaintiff satisfied the threshold requirements for non-economic damages under Canadian no-fault law, insurer was not entitled to summary judgment); *Schnellinger v. Aetna Life & Casualty Co.*, No. 60611, 1992 WL 140062, at *1 (Ohio.Ct.App. June 18, 1992) ("[A] declaratory judgment action concerning **recovery** under an underinsured motorist insurance policy is based in tort." (emphasis added)).

Moreover, the substantive tort question of the precise amount of damages due Miller is not before us. Were that the question, we would obviously follow *Kurent* and apply Ohio law, because the tort in the instant case occurred in Ohio. As the Ohio Court of Appeals has stated when confronted with cases where the type and amount of damages were at issue, "[T]he **measure of damages** from an automobile accident is a substantive question to be decided based upon principles of tort law." *Mayse v. Watson*, No. E–85–8, 1985 WL 7613, at *4 (Ohio.Ct.App. Sept.27, 1985) (emphasis added).[1]

The question before us, as heretofore indicated, does not concern the measure of damages from the underlying accident; rather, it concerns the limits on the amount of coverage which State Farm must provide under the policy it issued to Bishop. Given that, we agree with the district court that this case is more analogous to the *Fiste* case, 640 N.E.2d at 552, which involved an Ohio plaintiff who was seriously injured in an automobile acci-

dent in Canada. The plaintiff exhausted the tortfeasor's insurance and then turned to his own insurer, Auto Club, which paid him $5,000, the amount of his policy's stated limit for medical expense payments. *Id.* at 553. Under Canadian law, however, all motor vehicle insurance policies must cover medical expenses to the limit of $25,000 per person. The plaintiff argued that Canadian law should have applied because, among other reasons, it was the site of the accident, and thus he should have received an additional $20,000 for his medical expenses. The insurance company countered by arguing that Ohio contract law applied because the case involved an Ohio entity, an Ohio resident, and an underlying Ohio contract. *Id.*

The *Fiste* court agreed with the insurance company and looked to the law of Ohio, where the insurance contract was made. In so doing, it dealt with the same issue confronting us: whether tort or contract law applied to the case.

> Although the triggering event to this cause of action was the automobile accident which occurred in Canada, **because Fiste's cause of action herein is against his own insurer, as to Auto Club's contractual obligation to Fiste himself, and involves interpretation of a contract executed in Ohio by Ohio residents, this matter sounds in contract and not in tort. . . .**
>
> [P]ayment to Fiste under the medical payments section of his policy with Auto Club is not dependent upon the location of the accident or the nationality of the tortfeasor but, instead, **is a contractual obligation owed Fiste by Auto Club,** and dependent only upon a showing by Fiste that he was involved in an accident and sustained injuries requiring medical treatment.

*Id.* (citations omitted) (emphases added).

Likewise, we view the instant case as one that sounds in contract and not in tort. This

---

1. We note that, in *Nationwide Insurance Co. v. Fryer*, 62 Ohio App.3d 905, 577 N.E.2d 746, 749 (1990), the Ohio Court of Appeals held that the tort law of the state where an injury occurred controlled an insured's claim against an insurer for recovery of damages caused by a third party. The *Fryer* court stated that insurance policies do not "establish what type and to what extent dam-

ages should be recoverable." *Fryer*, 577 N.E.2d at 749. We believe that the *Fryer* court confused the issue of a tortfeasor's liability to a plaintiff with the issue of an insurer's liability on its contract. Under *Ferrin* and *Fiste*, and given the Ohio Supreme Court's recent statement in *Miller*, we believe that *Fryer* is in error, and we thus decline to follow it.

is a suit brought by the insured's executrix against the insurer. Moreover, the true heart of the matter—i.e., whether to apply the "per person" or "per accident" limit stated in the policy—involves the interpretation of an insurance contract executed in Pennsylvania by a Pennsylvania resident, with a company licensed to do business in Pennsylvania.

We also find guidance in the aforementioned case of *Nationwide Mutual Insurance Co. v. Ferrin,* 487 N.E.2d at 568–70. *Ferrin* involved a Florida truck driver who was involved in an accident in Ohio while he was transporting a yacht from Florida to Michigan. Ohio law prohibited the driver, Ferrin, from transporting his oversized load on weekends, so he had to stop in Ohio and remain there until Monday. Ferrin decided to unhitch his trailer at a truck stop and visit his parents in Ohio, but he had an accident on the way. The company that employed Ferrin had a policy prohibiting the unhitching of trailers for any reason, and requiring drivers to remain with their cargo at a truck stop. The insurance company denied coverage on the grounds that Ferrin had no permission to unhitch the trailer and leave the truck stop, and it sued Ferrin in Ohio state court, alleging that Ferrin was not covered by the policy. Florida law, however, differed from Ohio law in that Florida recognized the "initial permission" rule, under which a user of an insured vehicle who begins his journey with permission retains that permission while he operates the insured vehicle. *Id.* 487 N.E.2d at 570.

The threshold issue before the Ohio Supreme Court was whether Ohio or Florida law applied to determine the insurer's liability. The court held that Florida law applied because (1) the insurance contract was delivered in Florida, (2) the policy bore the trucking company's Florida address, and (3) the company employed Ferrin in Florida and sent him from Florida to Michigan to deliver the yacht. *Id.* Thus, in deciding whether the insurer was liable on the policy, the *Ferrin* court looked to the law of the state where the

insurance contract was made. This is an entirely different question from the issue of tortfeasor liability presented in the *Kurent* case, and it is the question analogous to the one presented in the case at bar.

Thus, we agree with the district court that, under *Ferrin* and *Fiste,* Pennsylvania law must be applied to interpret the coverage available in State Farm's policy in the instant case.[2] Bishop, a Pennsylvania resident, purchased the policy from State Farm in Pennsylvania. The policy was delivered to her there, and she made her premium payments there. Though the case comes to us because of a "triggering event" that occurred in Ohio, *Fiste,* 640 N.E.2d at 553, it ultimately concerns the interpretation of an insurance contract made in Pennsylvania.

### III. CONCLUSION

Because we agree with the district court's conclusions that this case sounds in contract and must be decided under Pennsylvania law, we AFFIRM.

---

2. Miller argues that *Kurent* impliedly rejected *Ferrin,* but we agree with the district court that this argument lacks merit. The *Kurent* court does not cite *Ferrin,* and Ohio courts have since

followed *Ferrin. E.g., Fiste,* 640 N.E.2d at 553. Moreover, as indicated above, *Kurent* and *Ferrin* are distinguishable because they present different questions.