**Paul W. HARPER, Plaintiff–Appellee/Cross–Appellant,**

v.

**BP EXPLORATION & OIL, INC., d/b/a BP Oil Company Defendant–Appellant/Cross–Appellee.**

No. 99–5442, 99–5472.

United States Court of Appeals, Sixth Circuit.

Jan. 22, 2001.

Before KENNEDY, SUHRHEINRICH and MOORE, Circuit Judges.

KENNEDY, Circuit Judge.

This dispute over the district court's award of attorneys' fees pursuant to 42 U.S.C. § 1988, and Tenn.Code Ann. § 4-21-311(b), is before the court on the appeal of defendant, BP Exploration & Oil, Inc., and the cross-appeal of plaintiff, Paul Harper. On appeal, BP alleges that the district court abused its discretion by failing to reduce the fee award to account for time spent on what it considers unsuccessful, unrelated claims and by applying a contingency fee multiplier. Harper argues that the district court abused its discretion by reducing the hourly rate of one of his attorneys and by declining to include post-judgment interest on the award from the date the court rendered its judgment on the merits of the underlying claims.

While we agree with the district court that Harper's unsuccessful claims are related to his successful ones, we do not believe the award should include time spent on Harper's cross-appeal. Accord-

ingly, we affirm the district court's judgment finding that Harper was entitled to attorneys' fees as to all but the award of fees on cross-appeal, which we reverse and remand. And because we do not believe the district court abused its discretion by reducing the hourly rate of one of Harper's attorneys or by declining to award post-judgment interest prior to its judgment quantifying the award, we affirm that portion of the district court's judgment as well.

## I. FACTS

The district court awarded Harper attorneys' fees pursuant to § 1988 and Tenn. Code Ann. § 4–21–311(b) as a result of his success in his underlying federal and state civil rights claims against BP. Those claims arose from BP's decision not to renew Harper's lease on a gas station located at Merritt Boulevard in Nashville, Tennessee; its decision not to lease him a new station on Charlotte Avenue; and its decision not to lease him a new station on Murfreesboro Road. All of these decisions, Harper alleged, were based on the fact that he is a black man. Accordingly, he claimed that BP's actions violated the Federal Civil Rights Act, 42 U.S.C. § 1981 and Tennessee's Human Rights Act, Tenn. Code Ann. § 4–21–101 (THRA). Additionally, he brought claims for violations of the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 (PMPA) and several state contract laws, and he claimed that BP's actions constituted a pattern and practice of discrimination. To remedy these harms, Harper requested that the district court award him compensatory as well as punitive damages. Harper successfully persuaded the district court that BP violated § 1981 and the THRA by not leasing him the Charlotte Avenue and Murfreesboro Road stations and that these violations entitled him to compensatory and punitive damages. On BP's appeal and

Harper's cross-appeal, we affirmed the district court's judgment finding that BP violated § 1981 and the THRA by denying Harper's request to lease the Charlotte Avenue station, found that Harper's Murfreesboro Road station claim was time barred, and found that Harper's cross-appeal lacked merit.

Based on this success, Harper filed a motion for attorneys' fees. On February 24, 1998, the district court held that Harper was entitled to attorneys' fees and referred the matter to a magistrate judge. Conducting the analysis prescribed by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the magistrate judge determined that the hourly rate requested for each attorney or paralegal that worked on the litigation was reasonable and that the award should include time spent on the entire course of the litigation. After calculating the product of these figures, the magistrate judge recommended that this product be enhanced by a multiplier to reflect the contingency fee agreement between Harper and his attorneys. Additionally, he recommended that the court include post-judgment interest on the award from the date of the judgment on the merits of the civil rights claims. And finally, he recommended that the district court not award Harper back pay.

On March 22, 1999, the district court entered its judgment, adopting the magistrate judge's recommendations with two modifications. First, it reduced the hourly fee of Mr. Jameson from $180/hour to $150/hour because of his lack of experience when he began working on the case. Second, the court concluded that it should not award post-judgment interest from the date of the underlying judgment because, as of that date, there was no award of attorneys' fees on which to calculate inter-

est. In total, the district court awarded Harper's attorneys $450,892.64 in fees.

BP appeals the district court's judgment and Harper cross-appeals.

## II. DISCUSSION

On appeal, BP argues the district court abused its discretion, and that abuse resulted in an excessive award. First, it contends that the district court abused its discretion by failing to determine whether all the claims were related to those on which Harper was successful. Second, BP argues, the court should not have applied the multiplier to the product of the rate charged and hours expended because neither the THRA nor federal law permits such a multiplier. And in the alternative, it argues, if this court determines that the THRA permits such a multiplier, the district court should not have multiplied the federal portion of the award. In addition to challenging BP's arguments, Harper argues the district court was wrong to decrease Mr. Jameson's hourly rate from $180/hour to $150/hour because he currently charges $180/hour and the Supreme Court has said that the hourly rate should be based on current market rates. Additionally, the district court erred, he maintains, by not calculating post-judgment interest on the award from the time the district court rendered its judgment in the underlying case.

■ In analyzing these claims, we review the district court's award of attorneys' fees under § 1988 for abuse of discretion. *See Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir.2000). "A district court abuses its discretion when it relies on clearly erroneous findings of facts" or "when it improperly applies the law or uses an erroneous legal standard." *Owner–Operator Indep. Drivers Ass'n, Inc. v. Bissell,* 210 F.3d 595, 597 (6th Cir.2000). Errors relating to the latter

constitute an abuse of discretion because a district court does not have discretion to apply the wrong legal standard. Of course, we review de novo whether the district court improperly applied the law or used an erroneous legal standard—including questions relating to state law. *See Miller v. State Farm Mut. Auto. Ins. Co.,* 87 F.3d 822, 824 (6th Cir.1996).

■ The basic federal approach for determining the amount of attorneys' fees to award was set forth by the Supreme Court in *Hensley v. Eckerhart.* Once the court determines that a plaintiff is a prevailing party, it must determine the product of the reasonable hourly rate and the hours reasonably expended on the litigation. *See Hensley,* 461 U.S. at 434. In making this determination, the court must exclude time spent on unsuccessful claims that are unrelated to a plaintiff's successful claims—that is, the unsuccessful claims that are based on "different facts and legal theories" than the successful claims. *Id.* When, however, the unsuccessful claims are related to the successful ones, then the court must ask "did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.* When the plaintiff has achieved excellent results, the court should award the attorney a fully compensatory fee. This fee should not be reduced "simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* at 435. But if the plaintiff achieved only limited success, the court should reduce the award accordingly. *See id.*

Unlike many of its sister states, Tennessee has not adopted this approach for awarding attorneys' fees. Instead, Tennessee courts are guided by the factors listed in Tennessee Supreme Court Rule 8,

of the Code of Professional Responsibility.[1] *See United Med. Corp. of Tenn. v. Hohenwald Bank & Trust Co.,* 703 S.W.2d 133, 136 (Tenn.1986).

In calculating the award, the district court couched most of its discussion in terms of the federal approach. Therefore, we will do the same in analyzing the appropriateness of that award.

## A. Relation of the Claims

■ From the outset of our analysis, we must disagree with BP's assertion that the district court failed to consider the relation of the successful and unsuccessful claims and therefore abused its discretion. While vague, the opinion does discuss the relation of the claims. Specifically, the court stated "Whether attorneys fees should be awarded for unsuccessful claims depends on whether the unsuccessful claims are factually [or] legally related to the successful claims. . . . The burden is on the Defendants to demonstrate that a particular charge relates only to an unsuccessful claim." The court went on to find that Harper's counsel achieved "excellent results," thereby implying that it concluded the claims were related.

And we do not believe that conclusion constitutes an abuse of discretion. As we see it, the claims are all factually related by virtue of Harper's request for punitive damages. Because the denial of each station goes to the question of the duration of BP's misconduct, and thus whether Harper was entitled to punitive damages, and if so, what amount of punitive damages was appropriate, *see Harper v. BP Exploration & Oil, Inc.,* No. 96-5854/5919, 1998 WL 45487, *6 (6th Cir. Jan. 27, 1998), the request ties all the claims together.

■ That the claims were related at trial, however, does not answer the question of whether the district court abused its discretion by awarding attorneys' fees for the time spent on the cross-appeal. The relation of the claims at trial is of little significance here because we view the cross-appeal as distinct from the direct appeal. In our view, the relationship required by reason of the single trial—the same preparation, evidence, and witnesses related to the claims—no longer prevails. Once the district court rendered it judgment, the claims on which Harper did not succeed at trial became distinct from those claims on which he did prevail.

And because the claims are now distinct, the rationale for awarding attorneys' fees to a plaintiff seeking to defend his judgment on appeal—if fees are not awarded for appeal work defending the judgment, plaintiff would not be represented on appeal and would thus forfeit his judgment—has no force in the context of a plaintiff attempting to increase the scope of his victory by obtaining a reversal of a portion of the trial court's judgment. *See Ustrak v. Fairman,* 851 F.2d 983, 990 (7th Cir. 1988) ("[A] distinction should be made between an appellant and an appellee. A civil rights plaintiff who, having won a judgment in district court, appeals, seeking a greater victory—and fails utterly in his appeal—will be hard pressed to demonstrate an entitlement to his attorney's fees on appeal, even though he remains the prevailing party in the underlying litigation."); *see also Baty v. Willamette Indus., Inc.,* 1999 WL 713959, at *3 (D.Kan. Aug.

---

1. Those factors are (1) the time devoted to the case, (2) the time limitations imposed by the circumstances, (3) the novelty and difficulty of the questions involved and the skills required, (4) the fee customarily charged for the services, (5) the amount involved and the results obtained, (6) the experience, reputation, and ability of the lawyer, (7) whether the fee is fixed or contingent, and (8) the length of the professional relationship with the client.

16, 1999). So while Harper continues to be entitled to fees for defending the claims on which he prevailed in the district court—even if he is only partially successful in doing so—since those claims are related by reason of a single appeal. Not so the claims in the cross appeal. There he seeks to secure relief on claims on which he was not the prevailing party. If he prevails on the cross appeal, he will, of course, receive fees. But where, as here, he did not prevail, he is never a prevailing party on those claims or issues. The cross appeal falls within the Supreme Court's admonishment that "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from the successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Hensley*, 461 U.S. at 440.

On remand, the court should exclude the hours related to the cross-appeal and multiply the remainder of the hours by the reasonable hourly rate.

### B. Hourly Rate

■ In so multiplying, the court should use the same hourly rates as before. That is to say, we do not believe the district court abused its discretion by reducing Mr. Jameson's hourly rate from $180/hour to $150/hour to reflect his experience at the time of the litigation. Contrary to Harper's assertions, the Supreme Court's statement in *Missouri v. Jenkins* that its "cases have repeatedly stressed that attorney's fees awarded under [§ 1988] are to be based on market rates for the services rendered," 491 U.S. 274, 283, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989), does not mean that a court should apply the hourly rate at which an attorney currently bills clients. Rather, it means, the court should apply the current market rate for an attorney with the experience the plaintiff's attorney

had at the time of the litigation. The district court found that rate to be $150/hour and we do not believe that finding was clearly erroneous.

### C. Contingency Enhancement

Moving to the district court's enhancement of the product of the reasonable hourly rate and the hours expended, we agree with BP that the manner in which the district court applied the multiplier constitutes legal error. However, we do not believe this error prejudiced BP. BP is correct that federal fee shifting statutes do not support such enhancements. *See City of Burlington v. Dague*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). Tennessee law, however, does allow for such enhancements. *See United Med. Corp.*, 703 S.W.2d at 136 (stating that as a general rule, a court should award higher attorneys' fees when the parties had a contingent fee agreement); *Roberson v. University of Tenn.*, 829 S.W.2d 149, 153 (Tenn.Ct.App.1992) (applying the Tennessee Supreme Court's analysis in the context of the THRA). And we previously allowed a court to apply a contingency enhancement to a fee that included time spent on both federal and state claims on the basis of the state's authorization of the enhancement. *See Davis v. Mutual Life Ins. Co.*, 6 F.3d 367 (6th Cir.1993). Consequently, we would allow the court to apply such a multiplier here.

■ The problem with the district court's application of the enhancement is it did not use Tennessee law as the basis for calculating the entire award. Instead, it used federal law to calculate the pre-enhancement award and Tennessee law to justify the enhancement. State law cannot be the basis for applying an enhancement where the court did not use that law, but instead used federal law, to compute the

pre-enhancement award.[2] In this case, however, BP was not prejudiced by this error because it did not demonstrate how the amount of the award would have differed if the district court had used only the state method to calculate the award. The Tennessee method takes into account all the factors underlying the federal method and several additional factors as well. If anything, the award would have been higher had the district court based its calculation exclusively on the Tennessee method. Accordingly, we affirm the district court's judgment applying the multiplier.

### D. Post–Judgment Interest

 Finally, we do not believe the district court abused its discretion by declining to award post-judgment interest prior to the date on which it entered its order quantifying the attorneys' fee award. Harper is correct that 28 U.S.C. § 1961 mandates that a court awarding attorneys' fees include in the award interest calculated from the "date of the entry of the judgment." *Id.* But he fails to identify the relevant judgment. The relevant judgment is not that awarding damages in the underlying case. Rather, it is the judgment awarding attorneys' fees. And because § 1961 applies to "money judgments," it only applies to judgments in which a sum of money has been entered. In this case, that was the judgment quantifying the award.

The Supreme Court's decision in *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990), supports our reasoning. In *Kaiser,* the Supreme Court held that un-

der § 1961, the plaintiffs' post-judgment interest did not accrue from the date of the first judgment in the case which was unsupported by the evidence but rather from the second judgment. *See id.* at 836. It reasoned that the interest could not accrue from the date of the first judgment because the damages had not been ascertained in any meaningful way and the purpose of § 1961 was to "compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." *Id.* at 835–36 (internal citation and quotation omitted).[3]

### E. Fees for Appeal

Harper's attorneys are entitled to an award of fees relating to this appeal as well. *See Weisenberger v. Huecker,* 593 F.2d 49, 54 (6th Cir.1979). However, for the same reasons discussed above, they are not entitled to an award for fees relating to Harper's cross-appeal.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's judgment as to all but the award of attorneys' fees on the cross-appeal, which we reverse, and we remand for a recalculation of the award consistent with this opinion.

MOORE, Circuit Judge, concurring in part and dissenting in part.

I concur in the majority's opinion except with respect to its decision overturning the district court's determination that attorneys' fees be awarded to Harper's counsel

---

**2.** This problem arises, of course, only when the state method of computing attorneys' fees differs from the federal method.

**3.** We are unpersuaded by Harper's argument that our ruling will provide incentive to litigants to file frivolous appeals in order to

delay paying attorneys' fees awards. As the Supreme Court noted in *Missouri v. Jenkins,* a court may take such delay into account by increasing the hourly rate used in the calculation. *See Jenkins,* 491 U.S. at 284.

for their time spent on Harper's cross-appeal. Because I do not believe the district court abused its discretion in awarding attorneys' fees for Harper's cross-appeal, I respectfully dissent as to that issue alone.

After BP appealed the district court's original judgment, Harper then filed a cross-appeal raising the following three issues: "(1) the district court should have awarded lost future profit damages; (2) the court should have awarded punitive damages in excess of $350,000; and (3) the court erred in finding insufficient evidence to support a claim of a pattern and practice by BP of discrimination against African Americans." *Harper v. BP Exploration & Oil, Inc.*, Nos. 96–5854/5919, 1998 WL 45487, at *1 (6th Cir. Jan. 27, 1998). On review of the magistrate judge's recommendation that Harper's attorneys be awarded fees for their time spent on the cross-appeal, the district court stated that "the cross-appeal was sufficiently related to defending against Defendants' appeal to justify including attorneys fees for the relatively small amount of time allocated to it." J.A. at 97.

This circuit has stated that, when considering whether attorneys' fees should be awarded for work on appeal, "the relevant inquiry is simply whether the party seeking compensation substantially prevailed at the appellate level." *Kelley v. Metro. County Bd. of Educ.*, 773 F.2d 677, 682 (6th Cir.1985) (en banc), *cert. denied*, 474 U.S. 1083, 106 S.Ct. 853, 88 L.Ed.2d 893 (1986). Furthermore, when a party has substantially prevailed on appeal, the Supreme Court has held that attorneys' fees should be awarded even for work on unsuccessful claims, so long as those claims

are "related" to the successful claims brought on appeal. *Hensley v. Eckerhart*, 461 U.S. 424, 440, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Claims are related if they "involve a common core of facts or [are] based on related legal theories." *Id.* at 435.

There is no question that Harper substantially prevailed on appeal in this case. The district court, in Harper's original trial, awarded him $350,000 in punitive damages and $280,287 in compensatory damages. *Harper*, 1998 WL 45487, at *1. On appeal, Harper and his attorneys successfully defended the district court's award of the entire amount of punitive damages, and they also successfully defended all but $97,888 of the district court's compensatory damages award. *Id.* at *7.[1] Thus, Harper substantially prevailed on appeal by successfully defending all but $97,888 of the $630,287 awarded to Harper at trial.

Because Harper substantially prevailed on appeal, *Hensley* instructs us that attorneys' fees should be awarded for the time spent on all of the successful claims on appeal, as well as for the time spent on those unsuccessful claims related to the successful claims. *See Hensley*, 461 U.S. at 440. While Harper's claims on cross-appeal were not successful, the majority holds, and I agree, that the claims on cross-appeal were factually related to the successful claims "by virtue of Harper's request for punitive damages." Thus, following *Hensley*, because Harper substantially prevailed on appeal, I agree with the district court that attorneys' fees should be awarded for all claims related to his successful claims, including his claims on cross-appeal. *See Hensley*, 461 U.S. at 440.

---

1. This circuit held that Harper's discrimination claim with regard to the Murfreesboro Road BP station was time-barred under the one-year statute of limitations of 42 U.S.C. § 1981 and the THRA, and thus no damages could be recovered on that claim. *Harper*, 1998 WL 45487, at *4.

The majority chooses, however, to treat cross-appeals as a distinct stage in the appellate process, stating that whether a civil rights plaintiff substantially prevails on appeal in defending the district court's findings of discrimination and damages, or whether the claims raised on cross-appeal are sufficiently related to the successful claims on appeal, is irrelevant to the award of attorneys' fees on cross-appeal. Instead, the majority looks only to whether Harper substantially prevailed on his claims on cross-appeal. If he did not, the majority concludes that no attorneys' fees will be awarded for those claims.

Unfortunately, the majority is unable to cite to any Sixth Circuit precedent to support this conclusion. Attorneys' fees are awarded in these cases to encourage the private enforcement of our nation's civil rights laws. *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1302 (6th Cir.1991). With no circuit precedent on point, I see no reason to contravene this policy by denying fees to Harper's attorneys for the time spent pursuing claims on cross-appeal that the majority admits are related to Harper's successful claims on appeal.

Because Harper substantially prevailed on BP's appeal of the district court's decision, and because Harper's claims on cross-appeal were sufficiently related to his successful claims on appeal, I find no abuse of discretion in the district court's decision to award attorneys' fees for the time spent on Harper's cross-appeal. Thus, I respectfully dissent from the majority's decision to deny attorneys' fees on Harper's cross-appeal. As for the remainder of the majority's opinion, I concur.