**Jane E. HAGBERG, et al., Plaintiffs,**

v.

**DELPHI AUTOMOTIVE SYSTEMS, an unincorporated division of General Motors Corporation, et al., Defendants.**

No. 4:01–01683.

United States District Court,
N.D. Ohio,
Eastern Division.

June 14, 2002.

856

Daniel R. Mordarski, Zeiger & Carpenter, Columbus, OH, Stephen T. Bolton, Thomas J. Lipka, Manchester, Bennett,

Powers & Ullman, Youngstown, OH, for Plaintiffs.

Daniel R. Freytag, Zeiger & Carpenter, Columbus, OH, Matthew J. Grimm, Janik & Dorman, Cleveland, OH, for Defendants.

## MEMORANDUM OPINION AND ORDER

LIMBERT, United States Magistrate Judge.

The above case came before the undersigned on Plaintiffs' motion for certification to the Ohio Supreme Court and motions for summary judgment filed by Defendant General Motors Corporation ("Defendant GM") who was served and sued as Delphi Automotive Systems, and Defendant National Union Insurance Company of Pittsburgh, Pennsylvania ("Defendant National Union"). *See* Electronic Court Filing (hereinafter "ECF") Dkt. # s 36, 37, 55.

For the following reasons, the undersigned GRANTS Defendant GM's motion for summary judgment based upon choice of law principles. Consequently, Plaintiffs' complaint is DISMISSED as against all parties and Plaintiffs' motion for certification to the Ohio Supreme Court is DENIED as MOOT. *See* ECF Dkt. # s 36, 37, 55.

## I. PROCEDURAL HISTORY

On November 9, 2001, Plaintiffs filed their third amended complaint against Defendants GM and National Union. *See* ECF Dkt. # 35. Plaintiffs indicated that on or about May 6, 1998, Plaintiff Jane Hagberg was involved in an automobile accident while on her way home from her job as a chemical engineer with Delphi Automotive Systems in Ohio. *See id.* at 2. Plaintiff Jane Hagberg stated that she collected the insurance policy limits from the insurance company of the tortfeasor, Gary

S. Meech, an underinsured motorist. *See id.* Further, she alleged that Defendant GM had a commercial automobile insurance policy along with an excess automobile fronting policy with Defendant National Union at all relevant times. *See id.* at 3. Plaintiffs alleged that Defendants GM and National Union extended underinsured motorist coverage in the State of Ohio, which coverage included insuring Plaintiffs for personal injuries and medical payments proximately caused by underinsured motorists based upon the Ohio Supreme Court's ruling in *Scott–Pontzer v. Liberty Mutual Fire Insurance Company,* 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999). *See id.* Plaintiff Eric Hagberg, husband of Jane Hagberg, filed a claim for a loss of consortium due to his wife's injuries. *See id.* at 3–4. Plaintiffs rely solely on the holding in *Scott–Pontzer* as the basis for their claims.

In *Scott–Pontzer,* Christopher T. Pontzer, an employee of Superior Dairy, was killed in an automobile accident while driving home from work in his wife's car. Pontzer was killed as the result of the negligence of Troy W. Taylor, who had an automobile liability insurance policy with limits of $100,000 per person and $300,000 per accident. At the time of the accident, Superior Dairy had commercial automobile liability insurance and an umbrella/excess insurance policy with Liberty Mutual Fire Insurance Company. Both policies identified Superior Dairy as the named insured, but only the commercial automobile liability policy of insurance contained an underinsured motorist coverage provision. The uninsured/underinsured motorist coverage form defined an "insured" for purposes of underinsured motorist coverage as the following:

B.   Who Is An Insured
  1.   You.
  2.   If you are an individual, any family member.

3.   Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.
4.   Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured.

*Scott–Pontzer,* 85 Ohio St.3d at 663, 710 N.E.2d at 1120. Kathryn Scott–Pontzer, Christopher Pontzer's wife, brought an action as surviving spouse and executrix of her husband's estate asserting that she was entitled to underinsured motorist benefits under Superior Dairy's automobile liability policy and umbrella/excess policy because her husband was an employee of Superior Dairy. The case proceeded through the courts to the Ohio Supreme Court.

Upon examining the policies at issue, the Ohio Supreme Court found the definitions of "insured" in the commercial liability policy ambiguous and held that

Rather, it would be reasonable to conclude that "you," while referring to Superior Dairy, also includes Superior's employees, since a corporation can act only by and through real live persons. It would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. Here, naming the corporation as the insured is meaningless unless the coverage extends to some person or persons—including to the corporation's employees.

*Scott–Pontzer,* 85 Ohio St.3d at 664, 710 N.E.2d at 1119. The Ohio Supreme Court also ruled that Pontzer was an insured under his employer's umbrella/excess policy even though that policy did not include underinsurance. *See Scott–Pontzer,* 85

Ohio St.3d at 665, 710 N.E.2d at 1120. The court reasoned that "[a]bsent any showing that underinsured coverage was offered and rejected, such coverage is included in the policy" by operation of law under the version of Ohio Revised Code § 3937.18 in effect at the time of the contract.[1] *See id.* The court also held that Pontzer did not have to be acting within the scope of his employment in order to collect under the commercial automobile liability policy because the policy did not contain such a restriction. *See id.* The court further held that the scope of employment language in the umbrella/excess policy was inoperative to Pontzer because it applied only to the excess liability portion of the policy, not underinsured coverage, given that the court had already found that Liberty Mutual failed to offer underinsured motorist coverage to Superior Dairy. *See* 85 Ohio St.3d at 666, 710 N.E.2d at 1120.

In the instant case, at the time of Plaintiff Jane Hagberg's automobile accident, Defendant GM had in place a Risk Management Program which contained motor vehicle liability policies issued by Defendant National Union, effective September 1, 1997 through September 1, 1998. *See* ECF Dkt. #38 at 2. These policies included a primary business auto fronting policy with a $300,000 policy limit and matching deductible of $300,000, and an excess business auto fronting policy containing a $9,700,000 policy limit with a matching deductible of $9,700,000. *See* ECF Dkt. #36,

Exhibits 2-4. These deductible endorsements also contained reimbursement clauses whereby Defendant GM was obligated to reimburse Defendant National Union for any payments made by Defendant National Union under the policies. *See id.* Defendant GM and Defendant National Union also had an Indemnity Agreement that was secured by a trust established by Defendant GM for Defendant National Union which served as collateral for Defendant GM's obligation under the Indemnity Agreement.[2] *See* ECF Dkt. #36, Exhibits 5-6.

The primary business auto fronting policy, Policy Number RM CA 1350935, listed General Motors Corporation as the named insured and, effective September 1, 1997, defined an "insured" with language identical to that in *Scott–Pontzer. See* ECF Dkt. # 36 at # 2, Exhibit A, Policy Number RM CA 1350935. The excess business auto fronting policy, Policy Number RM CA 1350937, named General Motors Corporation as the named insured, but does not show that uninsured or underinsured motorist coverage was part of the policy as the box next to the underinsured designation remains unchecked, while liability and personal injury protection are checked as applicable. *See id.* at # 3, Exhibit B, Policy Number RM CA 1350937. Nevertheless, under Ohio law, underinsured coverage can exist without designation in the umbrella/excess insurance policy by operation of law under the former version of Ohio Revised Code § 3937.18. *See Scott–*

---

1. The undersigned notes that effective October 31, 2001, Ohio Revised Code § 3937.18 was amended with the intent to, among other things, eliminate the mandatory offering of uninsured and/or underinsured motorist coverage, eliminate the implication of uninsured/underinsured coverage as a matter of law, to eliminate the mandatory written offer, selection or rejection of uninsured and underinsured coverage, and to supersede Ohio Supreme Court caselaw, including *Scott–Pont-*

zer. *See* Ohio Rev.Code. § 3937.18 and *Dolly v. Old Republic Ins. Co.,* 200 F.Supp.2d 823, 833, fn. 17 (N.D.Ohio 2002).

2. Defendant GM also had in place in many states, including Ohio, a corporate policy of insurance for uninsured/underinsured motorist protection for individuals occupying its vehicles. *See* ECF Dkt. #36, Exhibit 7. In Ohio, the limits of this policy were $12,500 per person and $25,000 per accident. *See id.*

*Pontzer,* 85 Ohio St.3d at 665, 710 N.E.2d at 1120.

Defendant GM, on behalf of Delphi Automotive Systems, and Defendant National Union answered Plaintiffs' third amended complaint and also filed separate motions for summary judgment. *See* ECF Dkt. # s 36–42, 48, 54, 60, 67. On January 23, 2002, Plaintiffs filed a motion in this Court requesting certification to the Ohio Supreme Court on the issue of whether Defendant GM's Risk Management Program constituted the practical equivalent of self-insurance. *See* ECF Dkt. # 55. On March 1, 2002, Defendant GM filed a memorandum in opposition to Plaintiffs' motion for certification. *See* ECF Dkt. # 62. On May 13, 2002, Plaintiffs filed a response to Defendants' motions for summary judgment and on May 20, 2002, Defendant GM filed a reply. *See* ECF Dkt. # 70. On June 3, 2002, Defendant National Union filed a reply to Plaintiff's response to its motion for summary judgment. *See* ECF Dkt. # 74.

## II. LAW AND ANALYSIS

### A. DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

#### 1. CHOICE OF LAW

The Court shall address Defendant GM's choice of law argument first. Defendant GM argues that Ohio choice of law rules mandate the application of Michigan law to its policies. *See* ECF Dkt. # 67 at 16. Defendant GM asserts that Michigan law rejects the Ohio Supreme Court's *Scott–Pontzer* interpretation of the word "You" in employer insurance policies, which is the sole basis of Plaintiffs' complaint against Defendants. *See id.* Defendant GM outlines the appropriate factors to analyze in determining the applicable state law and has attached the affidavit of Ronald Judd, the former Director of Risk Financing for Defendant GM beginning in 1996, who currently serves as Vice President, International, with Defendant GM. *See id.,* # 7.

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(C). Summary judgment is proper when no genuine issues of fact exist and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Under Rule 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *See Allen v. Wood,* 970 F.Supp. 824, 828 (E.D.Wash.1997)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and must identify the portions of " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp., v. Catrett,* 477 U.S. at 323, 106 S.Ct. 2548 (quoting FED. R. CIV. P. 56(c)). This initial burden can be discharged by the moving party by showing that the nonmoving party has failed to establish an essential element of the nonmoving party's case for which he or she bears the ultimate burden of proof at trial. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Morales v. American Honda Motor Co., Inc.,* 71 F.3d 531, 535

(6th Cir.1995). The evidence submitted must be viewed in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

If the moving party meets this burden, then the nonmoving party must take affirmative steps to avoid the entry of a summary judgment. *See* Fed. R. Civ. P. 56(e). The nonmoving party must present additional evidence beyond the pleadings. *See id.* The nonmoving party must do this by presenting more than a scintilla of evidence in support of his or her position. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment must be granted unless sufficient evidence exists that favors the nonmoving party such that a judge or jury could reasonably return a verdict for that party. *See id.* at 249, 106 S.Ct. 2505. The Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* If a party fails to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then the Court is required to enter summary judgment. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

Upon review of the summary judgment standard, the Court grants Defendant GM's motion for summary judgment based upon Ohio choice of law principles. A federal court exercising diversity jurisdiction must apply the law of the forum state, including that state's choice of law principles. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Miller v. State Farm Mutual Automobile Ins. Co.*, 87 F.3d 822, 824 (6th Cir.1996). In the instant case, the Court must look to Ohio choice of law principles in order to determine the appli-cable state law. Plaintiffs do not dispute the application of Ohio choice of law principles in their response brief.

■■■ In Ohio, which follows the Restatement (Second) of Conflict of Laws, a court must determine whether the cause of action sounds in contract or tort before applying choice of law principles because differing choice of law principles apply depending upon whether the cause of action is based on contract or tort. *See Ohayon v. Safeco Ins. Co. of Illinois*, 91 Ohio St.3d 474, 747 N.E.2d 206 (2001)(citing Restatement (Second) of Conflict of Law at 18, § 7, cmt. b). Therefore, the first step for this Court is to determine whether Plaintiffs' cause of action sounds in contract or sounds in tort under Ohio law.

■■ An examination of Ohio law clearly establishes that Plaintiffs' cause of action sounds in contract. The Ohio Supreme Court has held that "an action by an insured against his or her insurance carrier for payment of underinsured motorist benefits sounds in .contract rather than tort, even though tortious conduct triggers applicable contractual provisions." *Ohayon*, 91 Ohio St.3d at 480, 747 N.E.2d 206 (citing *Landis v. Grange Mut. Ins. Co.*, 82 Ohio St.3d 339, 341, 695 N.E.2d 1140 (1998)). The *Ohayon* court also held that "[q]uestions involving the nature and extent of the parties' rights and duties under an insurance contracts' underinsured motorist provisions shall be determined by the law of the state selected by applying the rules in Sections 187 and 188 of the Restatement of the Law 2d, Conflict of Laws (1971)." *Id.* at syllabus. Plaintiffs in this case are alleging that they are insureds under Defendants' insurance contracts by operation of law under *Scott–Pontzer*. Plaintiffs are seeking to determine the nature and extent of their rights and Defendants' duties under Defendants' insurance contracts and Plaintiffs are

seeking recovery based upon these contracts and their terms. Further, Plaintiffs have already recovered from the tortfeasor. *See Ohayon,* 91 Ohio St.3d at 480, 747 N.E.2d 206, citing and quoting *Motorists Mut. Ins. Co. v. Tomanski,* 27 Ohio St.2d 222, 223, 271 N.E.2d 924 (1971); *see also Fellows v. Genesis Ins. Co.,* 201 F.Supp.2d 795, 797–98 (N.D.Ohio 2002)(on diversity jurisdiction issue relating to *Scott–Pontzer* cases, Court states view that underinsured motorist coverage is contractual whether it exists by express terms or operation of law). For these reasons, and Plaintiffs' lack of argument to the contrary, the Court finds that the Ohio choice of law principles for contracts apply in the instant case.

Ohio has adopted sections 187 and 188 of the Restatement (Second) of Conflicts to analyze choice of law principles for causes of action based upon contract. *See Schulke v. Radio Prod., Ltd. v. Midwestern Broadcasting Co.,* 6 Ohio St.3d 436, 453 N.E.2d 683(1983)(adopting section 187) and *Gries Sports Ent., Inc. v. Modell,* 15 Ohio St.3d 284, 473 N.E.2d 807 (1984)(adopting section 188). Section 187 is inapplicable in the instant case as it applies only when it is established that the parties to a contract have chosen the state of the law to apply to their contract. *See* Restatement (Second) of Conflict of Laws § 187 (1971). This has not been established in the instant case and the parties do not dispute this fact.

■■■ Section 188 governs in the absence of an effective choice of law by the parties. Section 188 provides that the local law of the state with the "most significant relationship" to the transaction and parties applies to determine the rights and duties of the parties to a contract. Restatement (Second) of Conflict of Laws § 188 (1971). To help aid in determining the state that has the most significant contacts, section 188 cites to principles listed in section 6 of the Restatement (Second) Conflict of Laws. *See id.* These principles include:

a. the needs of the interstate and international systems,

b. the relevant policies of the forum,

c. the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

d. the protection of justified expectations,

e. the basic policies underlying the field of law,

f. certainty, predictability and uniformity of result, and

g. ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6. In helping to develop the principles of Section 6, Section 188 requires the Court to consider the following factors:

a. the place of contracting,

b. the place of negotiation of the contract,

c. the place of performance,

d. the location of the subject matter of the contract, and

e. the domicil, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) of Conflict of Laws § 188. Section 188 also notes that if the place of negotiation and the place of performance are in the same state, the local law of that state usually applies, with limited exceptions. *See id.*

In the instant case, the principles in Section 6 alone provide little help. Factor (a) favors Michigan in that it seeks to serve the insurance field and its policies. Ohio, on the other hand, seeks to serve the needs of its citizens who have been victims of automobile accidents with underinsured

motorists. Factor (b) favors Ohio as the forum state and the residence of Plaintiffs as again, it seeks to provide additional protection to its citizens when the tortfeasor is underinsured. However, factor (c) favors Michigan as that state seeks to protect the reasonable expectations of its citizen insurers and employer-insureds such as Defendant GM. Factor (d) favors both states equally as both seek to protect the expectations of its citizens, whether employers, employees or insurers. Factor (e) favors Michigan as its law is more aligned with the general principles of contract interpretation. Factor (f) is not determinative as a decision in this case will not achieve certainty, predictability or uniformity of result. Factor (g) favors both states equally as a federal court sitting in diversity has no more difficulty applying Michigan law than Ohio law, although Ohio law presents a more comprehensive task.

Compared to the broad canons outlined in section 6, the more exact factors outlined in section 188 provide much more guidance. In the instant case, Defendant GM has attached the affidavit of Ronald M. Judd, former director of Risk Financing for GM in 1996 through 2000 and currently Vice President, International, for GMACI in London, England. *See* ECF Dkt. # 36, exhibit # 7. In his affidavit, Mr. Judd attests that in his former position as director, he was familiar with Defendant GM's risk management program, including the policies at issue in the instant case. *See id.* at 2. Mr. Judd attested that these policies were delivered and issued for delivery in Michigan by insurance brokers licensed in Michigan, the policies were negotiated and made in Michigan, and a majority of Defendant GM's employees in the United States are located in Michigan, as well as 70% of the automobiles owned by Defendant GM. *See id.* at 3–4. Mr. Judd also attested that Defendant GM has more insurable property, by value, in Michigan than in any other state.

*See id.* at 4. Defendant GM also represents in its motion for summary judgment that its principal place of business is located at its Global Headquarters in Michigan. *See* ECF Dkt. # 67 at 20.

Plaintiffs fail to dispute any of Defendant GM's numerous contacts with Michigan in their response to the motion for summary judgment. In fact, Plaintiffs do not even address the choice of law issue in their response. *See* ECF Dkt. # 70. The only evidence before the Court is the uncontroverted affidavit of Mr. Judd and evidence that the only Ohio contacts in this case are Plaintiffs' residence and Plaintiff Jane Hagberg's employment, and the underlying automobile accident. Nearly every factor in section 188 weighs in favor of the application of Michigan law and Plaintiffs present no argument or evidence to the contrary.

Accordingly, the Court finds as a matter of law that the Restatement clearly favors the application of Michigan law to the instant case as while Ohio contacts exist, Michigan manifestly has the "most significant relationship" to the contracts at issue.

## 2. OUTCOME UNDER MICHIGAN LAW

█ Consequently, the question becomes whether Michigan law has adopted or otherwise followed the Ohio Supreme Court's holding in *Scott–Pontzer*. The task of this court when exercising diversity jurisdiction is to apply the same law that would be applied by the Michigan state courts. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In applying Michigan law, this Court first looks to the Supreme Court of Michigan. If that court has decided the issue, this Court is bound by that decision unless convinced that the Michigan Supreme Court would overrule its prior holding based upon the facts before this Court.

*See Kirk v. Hanes Corp. of North Carolina*, 16 F.3d 705, 707 (6th Cir.1994). If the Supreme Court of Michigan has not decided the issue, this Court should consider whether the Michigan Court of Appeals has decided the issue. *See id.; Garrett v. Akron–Cleveland Auto Rental, Inc.*, 921 F.2d 659, 662 (6th Cir.1990). State appellate court decisions are usually deemed authoritative unless there is a strong showing that the state's highest court would decide the issue differently. *See Garrett*, 921 F.2d at 662. The Court may also consider Supreme Court of Michigan dicta, restatements of the law, law review commentaries, and the majority rule among other states. *See Garden City Osteopathic Hospital v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir.1995).

■ The state of Michigan repealed its mandated uninsured and underinsured motorist protection amendment in 1973, the same year that the No Fault Act was passed requiring insurers to "pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." Mich. Comp. Laws Ann. § 500.3010 (repealed effective October 1, 1973 by P.A. 1972, No. 345 § 2); Mich. Comp. Law 500.3105(1); *Miller v. Farm Bureau Mut. Ins. Co.*, 218 Mich.App. 221, 225–226, 553 N.W.2d 371 (1996). Underinsurance motorist coverage is therefore considered optional insurance and "the scope, coverage, and limitations of underinsurance protection are governed by the insurance contract and the law pertaining to contracts." *Mate v. Wolverine Mut. Ins. Co.*, 233 Mich.App. 14, 19, 592 N.W.2d 379, 381 (citing *Rohlman v. Hawkeye–Security Ins. Co.*, 442 Mich. 520, 524–525, 502 N.W.2d 310 (1993) and *Auto–Owners Ins. Co. v. Leefers*, 203 Mich.App. 5, 10–11, 512 N.W.2d 324 (1993)).

Defendant points to the state appellate court case of *Michigan Township Partici-pating Plan v. Pavolich* to support its assertion that Michigan common law rejects Ohio's *Scott–Pontzer* theory. *See* ECF Dkt. # 67 at 17–20, citing 232 Mich. App. 378, 591 N.W.2d 325 (1998). In *Pavolich*, Pavolich was employed as a police officer with the Village of Lake Linden ("Village"). He stopped to question a suspect and when he reached into the suspect's vehicle, the suspect attempted to drive away with Pavolich caught on the vehicle. The suspect's insurance company paid the policy limits under his insurance policy and Pavolich made a claim for underinsurance benefits under the Village's contract with Michigan Township Participating Plan. This underinsurance plan identified the Village as the named insured and indicated that damages would be paid to an "insured," which was defined as:

a. You or any family member.

b. Any other person occupying "your covered auto."

c. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in a. or b. above.

232 Mich.App. at 381, 591 N.W.2d at 327–328. The policy also indicated that "you" and "your" meant the person or organization identified as the named insured. *See id.* Pavolich argued that he as an employee of the Village, the named insured, was covered under the Village's policy as "you" and "your" were ambiguously defined and a plain interpretation of the policy language rendered portions of the policy meaningless as it meant that no one was entitled to underinsurance benefits as the Village had no family members and could not sustain bodily injury.

In rendering its decision, the Michigan Court of Appeals noted that no reported

decision of the court had addressed the issue presented before it. *See* 232 Mich. App. at 380–381, 591 N.W.2d at 327. The court cited the following portion of its decision in *Royce v. Citizens Insurance Company* for guidance in reviewing and interpreting insurance policies:

> When determining what the parties' agreement is, the trial court should read the contract as a whole and give meaning to all terms contained within the policy. The trial court shall give the language contained within the policy its ordinary and plain meaning so that technical and strained constructions are avoided. A policy is ambiguous when, after reading the entire document, its language can be reasonably understood in different ways. If the trial court determines that the policy is ambiguous, the policy will be construed against the insurer and in favor of coverage. However, if the contract is unambiguous, the trial court must enforce it as written.

232 Mich.App. at 382–383, 591 N.W.2d at 328, quoting *Royce*, 219 Mich.App. 537, 542–543, 557 N.W.2d 144 (1996) (citations omitted). Based upon these contract principles, the *Pavolich* court held that a plain and ordinary reading of the policy before it barred coverage for employees of the Village as the policy language "you" specifically referred only to the Village and not to its employees. *See* 232 Mich.App. at 383, 591 N.W.2d at 328.

The *Pavolich* court found that the policy before it was a sloppy and inartfully drafted standard form not tailored to the Village's needs, and it contained surplusage as it provided coverage to the Village and its family members when the Village could not have family members or sustain bodily injury. *See* 232 Mich.App. at 383, 591 N.W.2d at 328. The court also noted that

this portion of the policy was rendered meaningless if the plain interpretation was used. *See id.* at 388, 591 N.W.2d at 330. Nevertheless, the court held that surplusage did not equate to ambiguity and in reviewing the word "you," along with the rest of the policy language taken in its entirety, the court found that

> there is only one interpretation that can be made when looking at the language as written. Any casual reader, giving ordinary and plain meanings to the language as written, would realize that the insured "YOU" does not refer to individual employees, but refers only to the village itself. Where the policy language describes unambiguously who is insured under the policy, there is no basis for finding an ambiguity. Because the policy is clear as written, we are bound by the specific language, and will not construe the policy to cover defendant simply to avoid a finding that there is surplus language in the contract.

232 Mich.App. at 388–389, 591 N.W.2d at 330–331. In making this decision, the court reviewed, discussed and relied upon the majority view of jurisdictions that a policy like the one before it was "not ambiguous and should be construed as written, even if certain provisions are rendered meaningless by a plain reading of the language." *Id.* at 384–388, 591 N.W.2d at 329–330.

Based upon the above discussion, and a paucity of evidence that the Michigan Supreme Court would decide the issue differently, this Court concludes that Michigan law does not incorporate or otherwise follow Ohio's *Scott–Pontzer* holding. Given that Plaintiffs' entire claim is based upon *Scott–Pontzer*, the Court accordingly DISMISSES Plaintiffs' claim based upon Michigan law. Summary judgment is

therefore GRANTED in favor of Defendant GM and Plaintiffs' complaint is DISMISSED as against all parties with prejudice. *See* ECF Dkt. # s 36, 37, 67.

## B. *PLAINTIFFS' MOTION TO CERTIFY*

Because the undersigned grants Defendant GM's motion for summary judgment on the basis of Michigan law, Plaintiffs' motion for certification is denied as MOOT as it requests certification to the Ohio Supreme Court for a determination as to whether Defendant GM's Risk Management Program constitutes the practical equivalent of self-insurance, thereby exempting it from Ohio Revised Code § 3937.18 and caselaw interpreting that statute. *See* ECF Dkt. # 55.

## III. CONCLUSION

For the foregoing reasons, the undersigned GRANTS Defendant GM's motion for summary judgment and DISMISSES Plaintiffs' complaint as against all parties with prejudice. *See* ECF Dkt. # 36. The undersigned further DENIES Plaintiffs' motion for certification to the Ohio Supreme Court as moot. *See* ECF Dkt. # 55.

IT IS SO ORDERED.